401 So.2d 812 (1981)
Thomas J. TAYLOR, Appellant,
v.
STATE of Florida, Appellee.
No. 80-1111.
District Court of Appeal of Florida, Fifth District.
July 1, 1981.
Rehearing Denied August 4, 1981.
*813 Kirk N. Kirkconnell of Muller & Kirkconnell, P.A., Winter Park, for appellant.
Jim Smith, Atty. Gen., Tallahassee and Edwin H. Duff, III, Asst. Atty. Gen., Daytona Beach, for appellee.
ORFINGER, Judge.
Appellant was charged with the first degree murders of Teddy Pawalta and John Walwyn and the attempted first degree murder of Harry Clayton. A jury found him guilty of second degree murder of Teddy Pawalta, manslaughter of John Walwyn and attempted manslaughter of Harry Clayton. From the judgments of conviction and sentences thereon this appeal follows. We affirm.
The charges arose out of a shooting that occurred on the evening of October 27, 1979, in a bar owned by appellant. The evidence reflects that after an altercation, appellant fired three shots from a shotgun. The first shot hit Teddy Pawalta in the chest; the second hit John Walwyn in the back and the third hit Harry Clayton in the back. The indictment charged appellant with committing the murders on the date of the shooting and the information charging appellant with the attempted murder of Clayton specified the date, but not the year. Before trial, the court granted appellant's motion for a statement of particulars of the date, time and place of the events charged in the indictment and the State responded to the motion. No request was made for a statement of particulars as to the crime charged in the information (where the year had been omitted), nor did appellant move to dismiss the information.
The statement of particulars filed by the State recited that the offenses charged in the indictment occurred "from 0001 hours on the 24th day of October, 1979 to 0001 hours on the 28th day of October, 1979." From the testimony of the expert medical witness who performed autopsies on the bodies, it was only established that the victims died sometime before 9:30 A.M. on October 28, 1979, the point at which the autopsies were performed. No other evidence was presented by the State as to the time of death. Appellant argues on appeal, as he did below, that there was a total failure of proof that any homicides occurred within the time set out in the indictment, as narrowed by the statement of particulars. The trial court granted the State's motion to amend the statement of particulars to extend the time by ten hours, so that the amended statement of particulars would include the time of the autopsies, the only time which the evidence conclusively established as the point of death. Appellant's first point on appeal questions the propriety of the trial court allowing the State to amend its statement of particulars in this fashion after the State had submitted its evidence and had rested.
Appellant relies heavily on that portion of the opinion in State v. Beamon, 298 So.2d 376 (Fla. 1974), cert. denied Beamon v. Florida, 419 U.S. 1124, 42 L.Ed.2d 824, 95 S.Ct. 809 (1975), wherein the court said that when a statement of particulars gives an exact date upon which the offense occurs
the effect of such a specification of date in a bill of particulars is to narrow the *814 indictment or information as to the time within which the act or acts allegedly constituting the offense may be proved... .
Id. at 379.
Beamon has been qualified, however, in Hoffman v. State,[1] 397 So.2d 288 (Fla. 1981), wherein the Supreme Court pointed out that where time is material, it must be proved as alleged.[2] On the other hand
[t]here may be some variance between the date alleged in the information as being the date the offense charged was committed and that proven on the trial, which variance is immaterial if the proof shows that the crime was committed before the filing of the information and that prosecution therefor was begun within the two year period, except in those rare cases ... where the exact time enters into the nature or legal existence of the offense.
Id., 1981 FLW at 262.
The court reemphasized the principle that the violation of a rule of procedure does not call for a reversal of a conviction unless the record discloses that non-compliance with the rule resulted in prejudice or harm to the defendant.[3] From a review of the other cases cited by the court in Hoffman, we are convinced that the propriety of the allowance of an amendment to a statement of particulars depends on a finding of absence of prejudice or harm to the defendant even when, as here, the amendment is proffered after the State has completed its presentation of its evidence.[4]
In Holland v. State, 359 So.2d 28 (Fla. 3d DCA 1978), cert. denied, 367 So.2d 1124 (1979), cited with approval in Hoffman, the information for second degree murder charged that the defendant had committed the offense on the day of the wounding, whereas the proof showed that the victim had lingered and had not died until five weeks later. An amendment to the statement of particulars to correct the date was allowed during trial and approved by the district court on the finding that defendant was not misled.[5] These facts are analogous to the instant case where the statement of particulars covered the time of the shooting, although not necessarily the time of death. In the instant case, the trial court responded to the State's request to amend by conducting an extensive inquiry into the matter, concluding that the determinative question was whether prejudice to the defendant existed. Finding none, the court allowed the amendment.
We hold that the court was correct in that determination. There was absolutely no doubt as to the offenses for which defendant was being tried. Further, there was no indication that he was prejudiced or misled by the fact that the indictment used the date of the shooting, whereas the proof of death was a few hours later. On the contrary, it affirmatively appears that there was no prejudice.
For these same reasons, appellant's complaint of error in allowing the State to amend the information to supply the year "1979" is also without merit. Appellant's counsel stated that he was aware of the *815 omission but did not feel obligated to draw the State's information. This was a technical omission which neither misled nor prejudiced defendant in the slightest, and the late attack on it was clearly the type of ambush denounced in Hoffman.
More provocative is appellant's next contention that the trial court erred in instructing the jury that one of the lesser included offenses of attempted first degree murder of Harry Clayton was "attempted manslaughter."[6] No objection was made by appellant to the giving of the instruction, and in fact, appellant's counsel responded in the affirmative when the trial judge posed the question of whether "there is a crime of attempted manslaughter."
Appellant now argues on appeal that he could not be convicted of attempted manslaughter even in the absence of an objection to the instruction, because there is no such crime in the State of Florida. Appellant's argument, in essence, is that since one of the elements of manslaughter is culpable negligence, it is a logical absurdity to say that one can have the intent to commit an involuntary (or negligent) act.
Manslaughter is the killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification. § 782.07, Fla. Stat. (1975). We have repeatedly said that the culpable conduct necessary to sustain proof of manslaughter under section 782.07 must be of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them. Filmon v. State, 336 So.2d 586 (Fla. 1976); Miller v. State, 75 So.2d 312 (Fla. 1954); Preston v. State, 56 So.2d 543 (Fla. 1952).
McCreary v. State, 371 So.2d 1024, 1026 (Fla. 1979). With this definition in mind, the same argument was addressed and rejected in Charlton v. Wainwright, 588 F.2d 162 (5th Cir.1979):[7]
Florida courts have long recognized the crimes of assault with intent to commit manslaughter and accessory before the fact to manslaughter. Both of these crimes, assault with intent and accessory before the fact, involve specific intent. The Florida Supreme Court has stated that assault with intent to commit manslaughter is a crime where the mode of assault constitutes "culpable negligence."
In addition to recognize that a person can have the specific intent to commit manslaughter, Florida courts have implicitly recognized the crime of attempted manslaughter. Devoe v. Tucker, 113 Fla. 805, 152 So. 624, 626 (1934).
Florida courts have given a special definition to "culpable negligence." Instead of construing it to emphasize involuntary and unintentional behavior, they have construed it to emphasize culpability which rests on intentional, or quasi-intentional behavior.
* * * * * *
In sum, Florida has defined culpable negligence to involve a state of mind so wanton or reckless that the behavior it produces may be regarded as intentional. As a result, Florida manslaughter convictions based on culpable negligence, like those based on act or procurement, demand proof of a level of intent greater than that of ordinary negligence. Since each of these three ways of committing manslaughter requires that intent predominate over accident or chance, petitioner's attack on the logic of attempted manslaughter by culpable negligence must fail. (footnotes omitted).
*816 While no opinion by a Florida court directly upholds the existence of the crime of "attempted manslaughter," at least one opinion in dictum has questioned it.[8]
As pointed out by the federal court in Charlton, the Florida Supreme Court has recognized the crime of assault with intent to commit manslaughter in at least four old cases, Devoe v. Tucker, 113 Fla. 805, 152 So. 624 (1934); State ex rel. Brown v. Mayo, 113 Fla. 746, 152 So. 627 (1934); Lassiter v. State, 98 Fla. 370, 123 So. 735 (1929); Kelly v. State, 78 Fla. 636, 83 So. 506 (1919). In Lassiter, Justice Brown, in a dissent, expressed doubt as to the existence of the crime because, he said, the statutory definition of manslaughter appears to eliminate the element of intent to kill, at least as to deaths resulting from culpable negligence.
One of the requisite elements of proof necessary to convict a defendant of an attempt to commit a crime is the formation of an intent to commit that crime.[9] There is a certain appeal to appellant's position that one cannot form an intent to commit an involuntary act, but if we start with the premise that there can be an assault with intent to commit the same [involuntary] act (manslaughter), then it must follow that there can be an attempt (the formation of an intent) to commit the crime, when the other elements of attempt are present.[10] Thus precedent, if not logic, requires that we hold that there is a crime of attempted manslaughter in Florida.
Because the question has not been directly addressed by the Supreme Court in almost 50 years and because it is a matter of importance to the bench and bar in the state, we certify the following question to the Supreme Court of Florida as a question of great public importance, to-wit:
IS THERE A CRIME OF ATTEMPTED MANSLAUGHTER UNDER THE STATUTES OF THE STATE OF FLORIDA?
Appellant's remaining point is without merit. Finding no error, the judgments of conviction and sentences thereon are
AFFIRMED.
SHARP, J., concurs.
DAUKSCH, C.J., concurs in part and dissents in part with opinion.
DAUKSCH, Chief Judge, concurring in part; dissenting in part:
I concur with the well-reasoned opinion of the majority all the way through the opinion until I reach the part where it says there can be a crime of "attempted manslaughter." Because there is a crime of culpable negligence, section 784.05, Florida Statutes (1979), which can be defined as manslaughter without the death (or even without any injury if it is subsection (1) of section 784.05), I think the "attempt to manslaughter" has been specifically covered by the Legislature.
Even if that were not so I would apply ordinary logic and say one cannot attempt to commit a crime which requires no intent in the first place. It is not without fear of being called wrong in my opinion, though, because I must admit that if the same logician who said there can be assault with intent to commit manslaughter is the one who decides whether there can be an attempted *817 manslaughter then my opinion is in trouble. I hasten to add I realize my two colleagues would probably like to apply the better logic rather than consider precedent if given freedom of legal choice. I admit precedent is against me and I almost concurred but felt the need to whistle, albeit probably in the wind.
I would rule it error to instruct on attempted manslaughter and to convict for that offense.
NOTES
[1] Approving 372 So.2d 533 (Fla. 4th DCA 1979), opinion by Dauksch, J. In that case the court allowed the amendment to the statement of particulars after opening statements had been made, after determining that defendant was neither misled by the date, nor prejudiced in his defense.
[2] Thorp v. Smith, 64 Fla. 154, 156, 59 So. 193 (1912).
[3] Richardson v. State, 246 So.2d 771, 774 (Fla. 1971).
[4] Appellant contends that Jefferson v. State, 391 So.2d 747 (Fla. 5th DCA 1980), requires reversal here, but it must be noted that in that case, the State did not, at any time, request leave to amend the statement of particulars.
[5] Hoffman suggests that the reader compare Holland with Crowell v. State, 238 So.2d 690 (Fla. 3d DCA 1970), where the State was denied the right to amend a bill of particulars to show the correct date of the crime. There, the defendant had prepared his defense to show that he was in jail on the date alleged, and the court agreed with defendant's contention that under those circumstances he would be prejudiced by the amendment.
[6] The jury found appellant guilty of attempted manslaughter of Harry Clayton.
[7] Charlton was a federal habeas corpus case. It reveals that the petitioner had been convicted by a Florida jury of attempted manslaughter, which conviction was affirmed without a written opinion. Charlton v. State, 336 So.2d 609 (Fla. 2d DCA 1979), cert. denied, 341 So.2d 1080 (1976).
[8] In Robinson v. State, 338 So.2d 1309 (Fla. 4th DCA 1976), the court commented: "We express serious doubt as to whether there is such a crime as attempted manslaughter. The definition of "manslaughter" suggests that "attempted manslaughter is an absurdity. However, for the reasons set forth below, we need not pass on that question." 338 So.2d at 1311. Yet in the same opinion, the court recognized the crime of assault with intent to commit manslaughter.
[9] Florida Standard Jury Instructions in Criminal Cases 2.03.
[10] Since oral argument in this case, the Supreme Court adopted, on April 23, 1981, new standard jury instructions in criminal and misdemeanor cases. We note that in the recently published list of lesser included offenses (not yet adopted, but as to which the court will accept comments), "attempt" is listed as a category 4 lesser included offense of manslaughter. See Brown v. State, 206 So.2d 377 (Fla. 1968).